IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JOHN V. PARKER,**

        Plaintiff

v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security

        Defendant.

Civil No. 10-821-AC

**FINDINGS AND
RECOMMENDATION**

ACOSTA, Magistrate Judge:

Plaintiff John Parker ("Parker") seeks judicial review of the Social Security Commissioner's final decision partially denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be reversed and remanded for the immediate calculation and award of benefits.

## BACKGROUND

Born in 1961, Parker alleges disability due to a stroke occurring on January 4, 2004. Tr. 76.

1 - FINDINGS AND RECOMMENDATION

The Commissioner denied this application initially and upon reconsideration. Tr. 56-70, 67-71. An Administrative Law Judge ("ALJ") held a hearing on November 30, 2007. Tr. 598-629. The ALJ subsequently found Parker disabled between January 4, 2004, and March 31, 2006, but not disabled after March 31, 2006. Tr. 17-26.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 405.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. § 404.1520(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant

2 - FINDINGS AND RECOMMENDATION

work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 405.1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 405.1520(g); 404.1566.

If a claimant is found disabled at any point in the above proceeding, the Commissioner may conduct an additional eight-step continuing disability evaluation to determine if the claimant remains disabled. 20 C.F.R. § 404.1594. This analysis again requires that the ALJ consider a claimant's RFC, and concludes with an inquiry into whether such an individual can perform work in the national economy. 20 C.F.R. § 404.1594(f)(1-8).

## THE ALJ'S FINDINGS

The ALJ found Parker's January 2004 cerebrovascular accident ("stroke") with residual symptoms and depression "severe" at step two in the sequential proceedings. Tr. 21. The ALJ found that Parker's stroke met the Commissioner's Listings at step three between January 3, 2004, and

3 - FINDINGS AND RECOMMENDATION

March 31, 2006, and that Parker was disabled under the Commissioner's regulations during this period. *Id.* As of March 31, 2006, the ALJ found that Parker experienced medical improvement pursuant to 20 C.F.R. § 404.1594(b)(1). *Id.* The ALJ assessed Parker's RFC as of March 31, 2006:

> [T]he claimant has the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently. During an eight-hour day, he can sit for two hours at a time, stand for one hour at a time, and walk for eight blocks. Furthermore, the claimant requires a short break every hour during the workday to urinate. Finally, because of his symptoms of fatigue and moderate limitations in concentration, persistence, and pace, the claimant is limited to simple, routine, repetitive work, and is able to perform at approximately 80 percent of a normal person's pace.
> Tr. 22.

The ALJ found that this RFC allowed Parker to perform work in the national economy as of March 31, 2006. Tr. 25. The ALJ therefore found Parker not disabled after that date. Tr. 26.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If reversible error arises, the court retains discretion to remand for further proceedings or the immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (cert. denied, 531 U.S. 1038 (2000)).

///

## ANALYSIS

Parker challenges the ALJ's finding that his disability ended March 31, 2006, specifically asserting that the ALJ's continuing disability analysis erroneously evaluated the opinion of treating neurologist Norman Freeman, M.D, and the credibility of Parker's symptom testimony. The Commissioner concedes that the ALJ's decision should not be sustained, but moves to remand the matter for further proceedings. Docket # 16. The Commissioner specifically asserts that this court should direct the ALJ to reconsider his finding that Parker was disabled between 2004 and March 2006, as well as to reconsider the medical evidence, Parker's testimony and that of a lay witness, to develop the record regarding Parker's work activity between 2007 and 2009, and to specifically assess Parker's limitations related to his hand and mental impairments. Def.'s Br. 7. Parker replies that the record establishes that he remained disabled as of March 31, 2006, and that further development of the record is unnecessary.

### I.    Medical Source Statements

Parker challenges the ALJ's assessment of treating neurologist's Dr. Freeman's opinion. Pl.'s Opening Br. 12. The relevant issue is whether Dr. Freeman's opinion establishes disability.

#### A.    Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. § 404.1527(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* at 830. The

ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The opinion of a reviewing physician may not constitute substantial evidence when it contradicts the opinion of a treating or examining physician. *Lester*, 81 F.3d at 831.

### B.  Analysis

The ALJ discredited Dr. Freeman's opinion in finding Parker not disabled after March 31, 2006. Tr. 24. Dr. Freeman began treating Parker on March 16, 2006 (Tr. 511), and remained involved in his care until December 2006, when the medical record closes. The record shows that neurologist Dr. Freeman treated Parker in conjunction with Kaiser primary care physicians. Tr. 472, 484-86, 489-90, 496, 500.

On March 16, 2006, Dr. Freeman conducted a comprehensive neurological evaluation. Tr. 511. He performed a clinical examination and reviewed medical records and imaging studies pertaining to Parker's January 2004 stroke. Tr. 511-14. Dr. Freeman assessed Parker's MRI brain scans:

> I would agree with the radiologist's impression. He felt that the findings were not suggestive of cerebrovascular pathology. There was significant atrophy of the cerebellar folia and also atrophy of the paramidline gyri of the posterior frontal lobes and aprietal lobes (it is conceivable that this thinning of brain tissue could be congenital, though cerebellar atrophy was not mentioned on previous MRI scan reports. It is also conceivable that the thinning is related to previous infractions, but the patter really does not look typical and is more diffuse and symmetrical). Tr. 513.

Dr. Freeman's chart note concluded that these studies were "puzzling," and stated that they

> [R]aise a question as to whether [Parker] could have a very slowly progressive neurodegenerative process causing atrophy, though

6 - FINDINGS AND RECOMMENDATION

> conceivably this is all congenital. I also think it is unusual that there are no residual areas of parenchymal tissue changes reflecting the previous strokes though conceivably these are reflected in the atrophy. Tr. 514.

On August 28, 2006, Dr. Freeman noted that a May 2006 angiogram showed "moderately severe fusiform stenosis of the distal basilar artery," and concluded that this could "possibly" explain Parker's January 2004 stroke symptoms. Tr. 496. Dr. Freeman concurrently expressed clinical uncertainty regarding the etiology of Parker's symptoms. Tr. 497. On December 5, 2005, Dr. Freeman noted Parker reports of cognitive challenges, left-hand coordination difficulties and a stumbling gait. Tr. 484. He concluded that while the exact etiology of Parker's syndrome remained unclear, January 2004 MRI findings were consistent with an acute stroke, and longitudinal MRI and CT studies were consistent with frontal and cerebellar atrophy of the brain. Tr. 485-86.

Finally, on December 17, 2006, Dr. Freeman wrote "I have medically evaluated and continue to follow Mr. John Parker. He is unable to work at this time due to medical problems." Tr. 516.

The ALJ twice discussed Dr. Freeman's opinion. Tr. 24. First, in finding that Parker experienced medical improvement on March 31, 2006, the ALJ noted that Dr. Freeman found no sign of residual brain tissue damage in an unspecified MRI study. Tr. 21. This finding flatly contradicts the record, which shows that Dr. Freeman repeatedly noted that imaging studies showed frontal and cerebral atrophy. Tr. 485-86.

Second, the ALJ cited Dr. Freeman's opinion in his discussion of Parker's RFC assessment. Tr. 24. Here the ALJ limited his discussion to Dr. Freeman's December 17, 2006, opinion that Parker was disabled. *Id.* The ALJ did not cite or discuss Dr. Freeman's chart notes, but found that Dr. Freeman's cumulative opinions were "not well supported by medically acceptable clinical and/or

7 - FINDINGS AND RECOMMENDATION

laboratory diagnostic studies and are inconsistent with other substantial evidence in the record." *Id.* The ALJ therefore declined to give Dr. Freeman's opinions substantial weight. *Id.*

The evidence discussed above shows that Dr. Freeman based his conclusions upon clinical examinations and a detailed study of Parker's MRI imaging studies. While Dr. Freeman was uncertain as to the cause of Parker's anatomical abnormalities and functional difficulties, Dr. Freeman's opinion and the associated imaging studies clearly establish that both existed throughout the period in question.

Further, Dr. Freeman worked in concert with other Kaiser physicians, as well as the emergency room physicians who treated Parker's initial stroke episode. As noted, the record shows correspondence between Dr. Freeman and numerous other physicians in coordinating care. *Supra*, 6. The record shows no disagreement among Parker's treating physicians regarding his diagnoses and clinically observed symptoms during the period after March 31, 2006. *Id.* Examining physician Tatsuro Ogisu, M.D., conducted a clinical evaluation on June 2, 2004, and concluded that Parker had experienced strokes of uncertain etiology, and had "at least mild" right-side in-coordination with probable higher-level cognitive deficits and possible "deterioration with fatigue." Tr. 319. Dr. Freeman's opinion is consistent with these other treating and examining physicians of record during this period.

However, Dr. Freeman's opinion was contradicted by medical expert Lawrence Duckler, M.D., who testified at Parker's November 30, 2007, hearing. Tr. 619-623. The testimony of a medical expert, standing alone, cannot constitute substantial evidence justifying rejection of a properly supported treating or examining physician's opinion. *Lester*, 80 F.3d at 831.

8 - FINDINGS AND RECOMMENDATION

Dr. Duckler stated that, in his opinion, Parker did not meet the Commissioner's listings after March 2006, specifically noting that Parker had a "normal" MRI. Tr. 621. When asked to consider Parker's symptom testimony, Dr. Duckler repeated that Parker did not meet the Commissioner's listings. Tr. 623. As discussed above, the record shows that Parker did not have "normal" MRI studies, although Dr. Freeman could not determine the cause of the findings. *Supra*, 6. Parker also had CT studies showing atrophy of his brain (Tr. 305), which Dr. Duckler did not cite. No other physician of record addressed the issue of whether Parker met the Commissioner's listings. Therefore, Dr. Duckler's opinion, which was limited to the issue of the Commissioner's listings, does not constitute substantial evidence justifying rejection of Dr. Freeman's opinion.

For all of these reasons, further development of Dr. Freeman's opinion is unwarranted. The consequences of crediting Dr. Freeman's opinion are discussed below.

## II. Credibility

Parker asserts that the ALJ's credibility analysis pertaining to the period after March 31, 2006, improperly characterized his activities of daily living and part-time work activity, and erroneously cited the medical record. Pl.'s Opening Br. 9-12. The Commissioner concedes that the ALJ erred.

### A. Standards: Credibility

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter*, 504 F.3d at 1036 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must

be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; *see also* SSR 96-7p, at *3 (available at 1996 WL 374186). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Smolen*, 80 F.3d at 1284. After a claimant establishes an impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### B. Analysis

The ALJ concluded that, as of March 31, 2006, it was clear that Parker had an underlying medical impairment that could cause his stated limitations and that Parker had "stated his case as he honestly perceives it." Tr. 24. The ALJ then found that Parker "fails to convince the undersigned that he is so impaired he cannot perform any kind of gainful work." *Id.* The ALJ based this finding upon Parker's reports of part-time work and activities of daily living, as well as Dr. Freeman's opinion and notes produced by vocational rehabilitation services. *Id.*

#### 1. Part-Time Work and Activities of Daily Living

The ALJ first found that Parker's part-time work activity did not amount to substantial gainful activity. Tr. 20. The ALJ then found this activity, in combination with Parker's ability to

perform self-care, prepare simple meals, walk, drive, and use public transit, inconsistent with his allegation of disability. Tr. 24.

The record shows that Parker performed part time work activity between April 2007 and November 2007, when the record closes. Tr. 601. Parker testified that during this time he worked between twenty to thirty hours per week as a "dot.com shopper" at Safeway, which entails filling online orders at a warehouse. Tr. 601.

The ALJ may cite a claimant's activities in finding them inconsistent with an allegation of total disability. *Batson*, 359 F.3d at 1196. Here, the record indicates that Parker worked 25 to 30 hours per week. Tr. 601. This is clearly more than minimal activity. However, the ALJ found Parker not credible beginning on March 31, 2006. Tr. 21. Parker did not begin working until April 27, 2007. Tr. 217. Citation to Parker's work activity in finding Parker not credible between March 31, 2006, and April 2007 is therefore irrelevant, and further proceedings would not augment analysis of this activity.

### 2. Physician Opinions

The ALJ also inferred that treating neurologist's Dr. Freeman's opinion detracted from Parker's credibility because it was not supported by medically acceptable diagnostic techniques. Tr. 24. The ALJ may cite the medical record and physician observations regarding a claimant's symptom testimony in conjunction with other credibility findings. *Smolen*, 80 F.3d at 1284.

As discussed above, *supra*, 6, Dr. Freeman's opinion is properly supported by clinical notes and findings. The ALJ's citation to Dr. Freeman's "unsupported" opinion in his credibility analysis was therefore erroneous. Further proceedings would not rectify this reasoning.

11 - FINDINGS AND RECOMMENDATION

### 3. Vocational Rehabilitation Records

Finally, the ALJ's credibility discussion cited Parker's vocational rehabilitation case notes. Tr. 24. The ALJ specifically cited a caseworker's December 2006 statement that it was difficult to convince Parker to "try something." *Id.* Parker's vocational rehabilitation records show that on December 13, 2006, Parker's caseworker stated that he was unwilling to consider employment options "beneath his level of competence," and that it was difficult to convince Parker to "try something." Tr. 238. However, on that date, Parker agreed to plan a directed course of vocational rehabilitation. *Id.* Further, Parker's work activity as a dot.com shopper indicates that he was willing and able to attempt work substantially different from his previous work as an engineer.

The ALJ may consider a claimant's poor work history in his credibility analysis, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002), but may not selectively read the record. *See Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (reaffirming that the ALJ must discuss all evidence that is significant and probative). The ALJ's finding regarding Parker's vocational rehabilitation notes accurately cited Parker's documented difficulty in accepting his limitations following his stroke, but selectively reads the record regarding Parker's willingness to work. The ALJ's inference that Parker was unwilling to work is therefore not based upon substantial evidence and should not be sustained. The Commissioner now asks that the matter be remanded for further proceedings regarding Parker's work activity in 2007, but this is again irrelevant to the determination of Parker's disability as of March 31, 2006. This motion should be denied.

### C. Credibility Conclusion

The ALJ's credibility findings, so far as they pertain to period after March 31, 2006, are not

based upon the record and the proper legal standards. Further development of the record to address the errors above would not disturb this conclusion pertaining to Parker's continuing disability as of March 31, 2006. The effect of crediting Parker's testimony is discussed below.

## V.  Remand

The court has discretion in deciding whether to remand for further proceedings or for immediate payment of benefits. *Harman*, 211 F.3d at 1178. The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348).

Here, the Commissioner concedes that the ALJ failed to properly evaluate Dr. Freeman's opinion and Parker's testimony. The ALJ's subsequent RFC assessment and conclusion that Parker

13 - FINDINGS AND RECOMMENDATION

could perform work in the national economy are therefore not based upon the proper legal standards.

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second prong of the credit-as-true analysis. *Strauss*, 635 F.3d at 1138. The Commissioner asserts that the record must be developed, particularly regarding Parker's 2009 earnings. Def.'s Br. 6. The Commissioner does not point to evidence establishing Parker's 2009 earnings and, further, Parker's 2009 earnings are irrelevant to review of the ALJ's December 20, 2007, decision. This court finds the record sufficient pertaining to the period under review and therefore declines to order it further developed.

The court must finally determine whether the record clearly requires an award of benefits after the improperly rejected evidence is credited. *Strauss*, 635 F.3d at 1138. Dr. Freeman stated that, as of December 17, 2006, Parker could not work. Tr. 516. However, the record also shows that Parker began working on April 23, 2007, though at a reduced part-time capacity. Tr. 217. Notably, the vocational expert testified that this performance was likely not competitive. Tr. 624. For this reason, crediting both Dr. Freeman's opinion and Parker's testimony does not establish a contradiction regarding Parker's ability to perform work in the national economy as it is usually performed.

Parker testified at his November 30, 2007, hearing that after completing his five hour shift he was too fatigued to perform additional activities. Tr. 603-04. The vocational expert testified that an individual too fatigued to continue working beyond a four- to six-hour shift would be unable to sustain work in the national economy. Tr. 629. This testimony establishes that, as of his November 30, 2007, hearing Parker remained unable to perform work in the national economy at step five in the sequential proceedings. Consequently, Parker remained disabled under the Commissioner's

regulations as of March 31, 2006.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision that, after March 31, 2006, Parker was not disabled under Title II of the Social Security Act, is not based upon correct legal standards and supported by substantial evidence. For the reasons above, the Commissioner's motion for remand should be denied. The Commissioner's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate payment of benefits.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due December 2, 2011. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days of the date objections were filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

IT IS SO ORDERED.

DATED this 18th day of November, 2011.

John V. Acosta
United States Magistrate Judge