IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| JOHN V. PARKER, | Civ. No. 3:10-CV-00821-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

      Claimant John V. Parker ("Parker") moves for attorney fees pursuant to 42 U.S.C. § 406(b), which permits a court to award attorney fees to the attorney of a successful social security claimant, so long as such award is "a reasonable fee for such representation" and "not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled . . . ." 42 U.S.C. § 406(b)(1)(A). Although Parker is the claimant in this case, the real party in interest to this motion is his attorney

Alan Stuart Graf ("Graf"),[1] and the Commissioner does not oppose the motion, but merely acts in a manner similar to "a trustee for the claimant[]." *Gisbrecht v. Barnhart*, 535 U.S. 789, 798 (2002). Having reviewed the proceedings below and the amount of fees sought, the court concludes that Graf is entitled to fees under section 406(b) but these fees should be reduced to twenty percent of past-due benefits.

*Procedural Background*

Claimant John Parker ("Parker") filed for disability benefits after suffering a stroke. The Commissioner denied his claim initially and on reconsideration. His claim was heard by an Administrative Law Judge ("ALJ") at a November 30, 2007, hearing. The ALJ found Parker disabled for the period between January 4, 2004, and March 31, 2006, but not disabled after March 31, 2006. Parker sought review of this decision by the Appeals Council, which request was denied, and Parker then sought review by this court.

Parker argued and the Commissioner conceded that the ALJ erred in analyzing Parker's disability claim. The parties disputed, however, whether the claim should be remanded for reconsideration or for benefits. The Comissioner argued that reconsideration was necessary to address the ALJ's finding that Parker was disabled between January 2004 and March 2006; the medical evidence in general; the testimony of Parker and a lay witness; Parker's recent work activity; and the specific impairments relating to Parker's hands and his mental health. Parker argued that further record development was unnecessary and that he was demonstrably disabled after March 31, 2006.

---

[1] Graf is lead counsel in this matter, but the billing statement reflects work by persons other than Graf. For ease of reference, the court will refer to Graf singularly as Parker's counsel.

FINDINGS AND RECOMMENDATION        2                                    {KPR}

This court evaluated the ALJ's opinion and the evidentiary record to determine if the ALJ's decision was reasonably based on substantial record evidence. First, the court evaluated whether the ALJ gave sufficient weight to the opinion of a treating neurologist. It first noted that the ALJ's finding that Parker did not have cerebral tissue damage was flatly contradicted by record evidence and that the ALJ selectively and unjustifiably cited Freeman's opinion in formulating Parker's "Residual Functional Capacity." The court also found that the ALJ gave only conclusory reasons for rejecting Freeman's conclusion. The court noted that although Freeman was uncertain about the cause of "Parker's anatomical abnormalities and functional difficulties[,]" he was certain that they did in fact exist and his conclusions were consistent with those of other medical providers.

Second, the court addressed the ALJ's reliance on the opinion of Dr. Duckler, a non-examining physician who testified at the hearing. The court noted that Dr. Duckler's conclusion that Parker's magnetic resonance imaging ("MRI") results were normal was incorrect; the MRI results were not normal. Furthermore, because Dr. Duckler's opinion addressed only whether Parker met a listing, it was an otherwise insufficient basis upon which to base the ALJ's rejection of the conclusions of Freeman, a treating physician.

Third, the court analyzed the ALJ's finding that Parker lacked credibility, as follows: The ALJ stated that Parker's part-time job filling orders for an online merchant undermined his claimed limitations. Although this information was relevant to evaluating total disability, the ALJ failed to note that Parker did not start this job until April 27, 2007, and did not account for the period between March 31, 2006, and April 27, 2007. The ALJ next stated that the unsupported nature of Freeman's opinion undermined Parker's credibility, though the reason for this was not explained. Finally, the ALJ relied on notes from Parker's vocational rehabilitation file wherein Parker was described as

reluctant to "try" and that he did not want to take on work below his pre-stroke skill level. However, as the court noted, these notes were taken the same day as Parker signed up for a retraining course, and his subsequent employment for an online merchant demonstrated his willingness to work below his skill level. The court noted that the ALJ was selectively reading these notes, which is not permitted. The court determined that the ALJ's credibility analysis was erroneous.

As a result of these errors by the ALJ, the court evaluated whether the matter should be remanded for reconsideration or an award of benefits. The court explained that crediting Freeman's testimony as true did not conflict with evidence that Parker worked part time because the vocational expert testified that the part time work was likely not competitive. Accordingly, the court determined that the case should be remanded for an award of benefits.

Parker sought EAJA fees and the Commissioner stipulated to fees in the amount of $8,247.51 and costs of $350.00. Parker currently seeks $17,401.00 in attorney fees which represent the fees agreed upon in the contingency agreement between Parker and Graf. If awarded, these fees will be reduced by the amount of EAJA fees already awarded.

*Discussion*

After entering a judgment in favor of a Social Security claimant who was represented by counsel, a court "may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of twenty-five percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment." 42 U.S .C. § 406(b)(1)(A). However, a "twenty-five percent contingent-fee award is not automatic or even presumed; 'the statute does not create any presumption in favor of the agreed upon amount.'" *Dunnigan v. Astrue*, Civil No. 07-1645-AC, 2009 WL 6067058, *7 (D. Or. Dec. 23, 2009) (quoting *Gisbrecht*, 535 U.S. at 807 n.17,

*adopted by*, 2010 WL 1029809 (March 17, 2010)). A section 406(b) fee award is paid from claimant's retroactive benefits, and an attorney receiving such an award may not seek any other compensation from the claimant. *Id*. Accordingly, when a court approves both an EAJA fee and a section 406(b) fee payment, the claimant's attorney must refund to the claimant the amount of the smaller of the two payments. *Gisbrecht*, 535 U.S. at 796.

I.     Fee Agreement

Under the Supreme Court's decision in *Gisbrecht*, the court first examines the contingency fee agreement to determine whether it is within the statutory twenty-five percent cap. Graf and Parker executed a contingent-fee agreement, providing counsel's fee would be the greater of: (1) twenty-five percent of any past-due benefits received, or (2) any EAJA attorney fee award obtained. (Plaintiff's Memorandum, Exhibit 3 at 2.) The terms of this agreement are within the statute's limits.

The next step is to confirm that the fee requested by counsel does not exceed the statute's twenty-five percent ceiling. This determination requires evidence of the retroactive benefits to be paid to the claimant. Graf presents a letter from the Commissioner indicating that twenty-five percent of Parker's past-due Social Security benefits totals $17,104.00. (Plaintiff's Memorandum, Exhibit 5 at 1.) Thus, the requested award is within the statutory limit. After determining that the fee agreement and the amount requested are in accordance with the statutory limits, this court next turns to "its primary inquiry, the reasonableness of the fee sought." *Dunnigan*, 2009 WL 6067058, at *10.

II.     Reasonableness Factors

An order for an award of benefits should not be viewed in isolation, nor can it be presumed always to require a fee award of twenty-five percent of a claimant's retroactive benefits award. *Dunnigan*, 2009 WL 6067058, at *12. If obtaining benefits always supported awarding fees for the maximum amount provided for by statue, the other *Gisbrecht* factors and the trial courts' assigned task of "'making reasonableness determinations in a wide variety of contexts'" would be unnecessary. *Id*. (quoting *Gisbrecht*, 535 U.S. at 808).

Counsel bears the burden to establish the reasonableness of the requested fee. *Gisbrecht*, 535 U.S. at 807. While the court must acknowledge the "primacy of lawful attorney-client fee agreements," contingent fee agreements that fail to "yield reasonable results in particular cases" may be rejected. *Id*. at 793, 807. The court must ensure a disabled claimant is protected from surrendering retroactive disability benefits in a disproportionate payment to counsel. *Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009) (*en banc*) (citing *Gisbrecht*, 535 U.S. at 808). The four factors to be considered when evaluating the requested fee's reasonableness have been identified by the Ninth Circuit as derived from the Court's analysis in *Gisbrecht*:

1.  the character of the representation, specifically, whether the representation was substandard;
2.  the results the representative achieved;
3.  any delay attributable to the attorney seeking the fee; and
4.  whether the benefits obtained were "not in proportion to the time spent on the case" and raise the specter that the attorney would receive an unwarranted windfall.

*Crawford*, 586 F.3d at 1151-53 (citations omitted). The Ninth Circuit, in *Crawford*, also identified the risk inherent in contingency representation as an appropriate factor to consider in determining a section 406(b) award. It focused the risk inquiry, however, stating that: "the district court should

look at the complexity and risk involved in the specific case at issue to determine how much risk the firm assumed in taking the case." 586 F.3d at 1153.

      A.      *The Character of Representation*

Substandard performance by a legal representative may warrant a reduction in a section 406(b) fee award. *Crawford*, 586 F.3d at 1151. The record in this case, however, provides no basis for a reduction in the requested section 406(b) fee due to the character of Graf's representation. Having admitted that the ALJ erred in some respects, the Commissioner nonetheless argued that the case should be remanded for reconsideration. Graf competently and successfully argued that the remand should be for an award of benefits.

      B.      *Results Achieved*

Graf obtained a remand order from this court awarding benefits, an unquestionably positive result. Even so, it is relevant that the Commissioner stipulated to the remand and opposed only the nature of the remand. That the Commissioner stipulates to remand may justify reducing the fees awarded, depending on the facts of the particular case. *See Caldwell v. Commissioner of Soc. Sec.*, Case No.: 3:10-cv-06039-ST, 2012 U.S. Dist. LEXIS 67807, at *5 (D. Or. May 14, 2012) (reducing the award where the Commissioner stipulated to remand, counsel filed an opening brief, and the retroactive benefits were substantial and would have represented a windfall to the attorney who expended less than twenty-four hours on the case; also noting that the court should not consider the general risks of social security representation); *see Dunnigan v. Astrue*, No. CV 07-1645-AC, 2009 WL 6067058, at *12 (concluding that in light of the stipulation to remand, "Dunnigan's attorney faced a less daunting challenge here than he would have if the Commissioner had vigorously defended the ALJ's decision or argued to uphold the ALJ's decision because the errors could not

be reversed under the controlling standard of review."); *but see Lewis v. Commissioner of Soc. Sec.*, 3:09-cv-1381-ST, 2011 U.S. Dist. LEXIS 144986 (D. Or. Dec. 16, 2011) (where the opening brief was followed by a stipulated remand for further proceedings, the court nonetheless awarded the full twenty-five percent of past-due benefits where the case was unremarkable, the hours expended reasonable, and the effectively hourly rate did not suggest that the attorney would receive a windfall). Thus, although a stipulation to remand does not preclude an award of the full twenty-five percent provided for in a contingency agreement, it may provide a basis to reduce such an award as unreasonable.

Here, Parker filed a fifteen-page opening brief that addressed four errors by the ALJ. Specifically, Parker argued that the ALJ erred in discrediting his testimony; rejecting the opinion of a treating physician; evaluating record evidence as to depression and motor limitations; and applying the "continuing disability" analysis. Parker sought a remand for an award of benefits. The Commissioner responded by agreeing that the ALJ erred, stipulating to remand, but arguing that the remand should be for reconsideration. Parker filed a short reply brief arguing that the Commissioner had conceded dispositive issues, made unsupported assertions in response, and that the proper remedy was a remand for benefits.

Having filed a full-length and complete opening brief, Parker's counsel had already completed the majority of the work required for a successful social security challenge. This included making the initial intake decision, reviewing the administrative record, reviewing the evidentiary record, identifying errors by the ALJ, and drafting a opening brief outlining those errors in a comprehensive way. Furthermore, although the Commissioner stipulated to remand, the response brief set forth arguments that called for a response from Parker, and a reply brief was

generated and filed. Thus, despite the fact that the Commissioner stipulated to errors by the ALJ, this did not substantially decrease the workload on Graf, who had already performed a full review and analysis of the underlying record, and drafted an opening brief setting forth his client's position. In fact, the results obtained by Graf could be characterized as doubly successful: first, Graf successfully persuaded the Commissioner to stipulate to remand and, second, successfully persuaded the court to remand the claim for an award of benefits. Even so, the Commissioner's stipulation did permit Graf to focus on the remand issue, decreasing the burden of representing Parker to at least some appreciable degree.

        C.     *Undue Delays*

A court may reduce a section 406(b) award for delays in proceedings attributable to claimant's counsel. *Crawford*, 586 F.3d at 1151. Parker's opening brief was filed timely on February 3, 2011, and no extensions were requested prior to filing. The Commissioner requested and was granted an extension prior to filing a response brief which stipulated that the ALJ erred and a moved to remand for reconsideration. Parker filed a reply in support of his position that the remand should be for an award of benefits. This position was reasonable and, ultimately, successful. Accordingly, there is nothing in the record to suggest that there was delay attributable to Graf, the attorney seeking the fee, and a reduction of Graf's fee request is unwarranted under this factor.

        D.     *Proportionality*

Finally, a district court may reduce a section 406(b) award if "benefits . . . are not in proportion to the time spent on the case." *Crawford*, 586 F.3d at 1151 (citing *Gisbrecht*, 535 U.S. at 808). The Supreme Court explained "[i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is . . . in order." *Gisbrecht*, 535 U.S. at 808.

Graf requests $17,104.00 for 46.05 hours of work, which equates to a rate of $371.42 per hour. In comparison to *Crawford*, and other cases in this district in which fees were awarded under section 406(b), this rate is within the reasonable range. *See Crawford* (reversing the district court in three consolidated California cases and granting claimants' requests for fees that resulted in hourly rates of $875 (amounting to seventeen percent of past-due benefits), $519.19 (amounting to fifteen percent of past-due benefits), and $813.56 (amounting to fourteen percent of past-due benefits)); *see Albert v. Astrue*, Civil No. 05-890-AC, 2011 U.S. Dist. LEXIS 57187 (D. Or. Apr. 28, 2011) (granting claimant's request for twenty percent of past-due benefits which amounted to 33.55 hours at rate of $536.51); *see Dunnigan* (awarding reduced fee award at the hourly rate of $291.10, amounting to twelve and a half percent of past-due benefits); *see Caldwell* (characterizing the case as "straightforward" and awarding reduced fees at the hourly rate of $428.99, amounting to fourteen percent of past-due benefits); *see Lewis* (awarding full fees of twenty-five percent of past-due benefits, amounting to an hourly rate of $335.19). Thus, on its face, the hourly rate of $371.42 does not suggest an element of unreasonableness that would cause the court to depart from the contingent fee agreement.

Even so, the billing statement submitted by Graf reveals that three people performed work on this case, for a total of 46.05 hours: Graf, 5.1 hours; Kim Tucker, 1.75 hours; and Jeffrey Baird, 39.2 hours. From the court's review of the statement it appears that Baird did the bulk of the drafting work with minimal supervision from Graf. There is no information in the fee application indicating Baird's level of experience with social security appeals or his legal experience generally.

Nonetheless, because the effective hourly rate is relevant to the reasonableness analysis, the court should consider the expenditure of more hours than is usual in a particular case with a more

critical eye. Here, the relatively lengthy amount of time spent on Parker's appeal acts to drive down the effective hourly rate and make the fee request appear more reasonable. However, even if the billing statement reflected ten fewer hours of work, bringing it within the range generally considered normal, the effective hourly rate would be $468.60. This hourly rate is on the high end of the spectrum of what courts in this district have found reasonable under the *Gisbrecht* analysis, but not substantially higher than those rates routinely deemed reasonable. In light of the foregoing, this factor weighs in favor of a reduced award, but not to a substantial degree.

   *E.*  *Risk*

The court recognizes the risk inherent in taking cases on contingency and the nature of contingency work is one element to consider when evaluating the fourth factor under *Crawford* – whether the fee sought is in proportion to the time spent on the case and whether counsel is receiving an unwarranted windfall. Without a doubt, there are challenges presented for attorneys in undertaking contingency work on behalf of Social Security claimants. Even so, while a contingency agreement is one element to be considered, it does not serve as a sole basis for justifying a fee award.

To the extent Graf continues to argue the court must consider the generalized risk for all the contingent fee cases in his practice when the court determines an appropriate award in a specific case, the court rejects such an argument. And, again, while the Ninth Circuit's decision in *Crawford* clarified that risk is an appropriate factor to consider in determining a section 406(b) award, it required the individual case be the focus of the risk analysis: "the district court should look at the complexity and risk involved in the specific case at issue to determine how much risk the firm assumed in taking the case." 586 F.3d 1142, at 1153. Looking at a particular firm's "overall success

FINDINGS AND RECOMMENDATION  11               {KPR}

rate" is the wrong approach to assessing risk. *Id*. at 1152.

In considering the risk specific to this case, the court notes that Parker's case was arguably less risky because the record contained clear errors that were evident to the Commissioner upon being advised of them in Parker's opening brief. That said, it takes an experienced practitioner and a close examination of the relevant documents and records to effectively identify such insufficiencies. Although the Commissioner stipulated to remand, he only did so after Parker filed his opening brief, that necessarily laid out the whole of his case, and even then maintained that a reconsideration of the underlying record was necessary to evaluate Parker's disability. That this Commissioner stipulated to error by the ALJ did not obviate the risk assumed by counsel at the outset, and this consideration does not compel a reduction in fees on this basis.

## *Conclusion*

Based on the foregoing analysis, the court concludes that Parker's Unopposed Motion for Attorney Fees (#26) should be granted in part. The longer than usual period of time expended on this appeal coupled with the narrowing of issues occasioned by the Commissioner's stipulations call for a slightly reduced award of twenty percent of past-due benefits. As such, Graf should be awarded $13,683.20 under section 406(b), less the $8,247.51 in EAJA fees already awarded, for a total award of $5,435.69.

## *Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due September 19, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy

of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 5th day of September, 2012.

       /s/ John V. Acosta
    JOHN V. ACOSTA
United States Magistrate Judge

Case 3:10-cv-00821-AC   Document 28   Filed 09/05/12   Page 14 of 14